(No. 16085.—Judgment reversed.)

The Vulcan Detinning Company, Appellee, *vs.*
J. N. St. Clair, Appellant.

*Opinion filed December 16, 1924.*

1. Injunction—*appeal is proper remedy where injunction is too broad—contempt.* If the defendant is of opinion that the court erred in ordering an injunction against him or that the injunction ordered was too broad in its terms he should appeal from the decree, and in a subsequent proceeding for contempt, charging violation of the injunction, the sole question is whether the injunction was violated.

2. Same—*injunction must be obeyed until modified or set aside.* Where the court ordering an injunction to issue has jurisdiction of the subject matter and of the persons, an order made in the exercise of this jurisdiction, though erroneous, must be obeyed until it is modified or set aside by the court entering the order or reversed by an appellate court.

3. Same—*equity cannot enjoin crime or libel except to prevent injury.* The right to the preventive aid of equity is based upon the necessity of preventing irreparable damage to property and property rights and of restraining actionable wrongs for which the remedy at law cannot afford proper and adequate redress, and equity cannot act for the sole purpose of preventing the commission of crime or the utterance of a libel unless the act complained of threatens an irreparable injury to property.

4. Same—*when relief by injunction to protect business should be denied.* In order to entitle one to relief by injunction against unlawful interference with his business positive and substantial injury must be shown, and where it appears that the injury is not of an irreparable nature and that the wrongs suffered by the complainant may be fully and adequately redressed by an action at law for recovery of damages, relief by injunction should be denied.

5. SAME—*purpose of an injunction to enjoin strikers from interfering with business.*   The purpose of an injunction enjoining striking employees from interfering with the complainant's business by means of intimidation or threats is to protect the property and business of the complainant rather than to protect the working employees from libelous epithets published or spoken of them at meetings out of their presence.

6. CONTEMPT—*what is not a violation of injunction against interference with business.*   An order enjoining strikers from interfering with the complainant's business by means of threats or intimidation of his employees, by calling them "scabs" or other offensive, scurrilous or opprobrious names, is not violated by publishing in a newspaper a notice and report of a meeting of the strikers giving the names of certain employees who were voted as "traitors," as such report, while it may be libelous as to the individuals concerned, is not so injurious to the complainant's business as to require the exercise of equitable jurisdiction by injunction.

FARMER, J., dissenting.
DeYOUNG, J., specially concurring.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

JAMES J. CONWAY, for appellant.

BOYS, OSBORN & GRIGGS, and ARTHUR H. SHAY, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

December 27, 1921, the Vulcan Detinning Company, appellee, and other employers of labor in the city of Streator, announced through the public press that upon the expiration of their respective contracts with the several labor unions interested therein, their plants and factories would be operated on the "open shop" policy. For many years prior to 1921 the employees of appellee and most of the manufacturers in Streator were members of labor unions, and the contracts of employment were made with the employers by

committees representing the organized employees. When appellee refused to treat with the representatives of Vulcan Federal Union No. 15,107 (the union to which its employees belonged) a strike was called. January 5, 1923, there was filed in the circuit court of LaSalle county a bill of complaint containing the usual allegations of threatening and intimidating employees, and praying for the issuance of an injunction restraining certain named persons, including J. N. St. Clair, appellant, from interfering with the business and destroying the property of appellee. At the conclusion of the hearing on the bill a decree was entered in accordance with the prayer. Appellant and others were restrained from in any manner whatsoever, by use of threats of personal injury, intimidation or suggestion of danger, interfering with, hindering, obstructing or stopping any person employed by the Vulcan Detinning Company in connection with its business or its factory in LaSalle county and from interfering with any person seeking employment with said company, and from inducing or attempting to induce, or compelling by threats, intimidation, violence, putting in fear or by suggestion of danger, any of said company's employees to leave its employ, and from assembling or congregating about or in the proximity of the company's plant, and from applying opprobrious epithets to any of the employees of or to any person seeking employment with said corporation, and from calling any of said employees "scabs" or other offensive, scurrilous or opprobrious names. February 24, 1923, there was filed in the circuit court of LaSalle county a petition asking that the court direct appellant and others to appear and show cause why they should not be adjudged guilty of contempt. The petition charges, among other things, that appellant, who is the president of Vulcan Federal Union No. 15,107, caused to be published in the *Streator Daily Free Press* and the *Daily Independent Times,* two newspapers of general circulation in the city of Streator and vicinity, the following notice:

"At their meeting held on February 18, 1923, the members of Vulcan Federal Union No. 15,107 voted unanimously to continue their strike against the Vulcan Detinning Company until an honorable agreement is reached. Those voted as traitors are ex-members W. H. Thomas and John Krapljon, now in the Vulcan works, and Charles Heresheway, at the Western Glass Works. Former union men now at the Vulcan works are George Sourby, Andrew Galick and Gus Samuelson. No red-blooded man will steal a real man's job. We are out to win, and will win.

VULCAN FEDERAL UNION 15,107.

By order of the organization."

The petition charged appellant and others with other acts in violation of the order granting the injunction, but the chancellor properly held that these charges were not sustained. The chancellor found appellant guilty of contempt of court and sentenced him to pay a fine of $500. The Appellate Court for the Second District affirmed the order of the circuit court. A certificate of importance was granted, and this appeal followed.

The decree of the circuit court granting the injunction stands without modification, and the sole question for determination on this hearing is whether appellant violated the injunction. If appellant was of the opinion that the court erred in ordering the injunction to issue or that the injunction ordered was too broad in its terms he should have appealed from the decree. Where the court ordering the injunction to issue has jurisdiction of the subject matter and of the persons, an order made in the exercise of this jurisdiction, though erroneous, must be obeyed until it is modified or set aside by the court entering the order or reversed by an appellate court. (*Lyon & Healy* v. *Piano Workers' International Union,* 289 Ill. 176; *Christian Hospital* v. *People,* 223 id. 244; *Franklin Union No. 4* v. *People,* 220 id. 355.) When a court orders an injunction which is so broad in its terms that it invades fields of human activities it has no right to invade, its order will be modified or set aside on review, and this orderly remedy by review is always open to any person who feels that his constitu-

tional rights have been invaded. Equity has no right to act for the sole purpose of preventing the commission of crime or the utterance of a libel unless the act which amounts to a crime or a libel threatens an irreparable injury to property. The right to the preventive aid of equity is based upon the necessity of preventing irreparable damage to property and property rights and of restraining actionable wrongs for which the remedy at law cannot afford proper and adequate redress. In order to entitle one to relief by injunction against unlawful interference with his business positive and substantial injury must be shown, and where it appears that the injury is not of an irreparable nature and that the wrongs suffered by the plaintiff may be fully and adequately redressed by an action at law for recovery of damages, relief by injunction should be denied. (High on Injunctions,—4th ed.—sec. 1415*f*.) Injunction is an extraordinary remedy, and where human liberty is involved the writ should be used with great caution.

In the case at bar appellant was enjoined from doing many things, but according to the finding of the chancellor the order was disobeyed in no respect except in the publication of the notice hereinbefore quoted. In order to determine whether there was a violation of the order awarding the writ it is proper to refer to the bill of complaint as a whole, the answers thereto and the decree, for the purpose of determining the matters in issue between the parties to the controversy. The object of the bill and the order was to prevent actual interference by appellant and his associates with the complainant in securing employees. The non-union men employed by appellee were not parties to the bill, nor was it the purpose of the bill to protect them from violence, slander or in any other respect, except in so far as their protection was necessary to the protection of the business and property of appellee. The employees of appellee were protected on the same theory and for the same purpose as its machinery and buildings. The

order restraining appellant and his associates from "applying opprobrious epithets to any of the employees of the Vulcan Detinning Company, a corporation, or to any person or persons seeking employment at the factory of the Vulcan Detinning Company, a corporation, and from calling them or either of them scabs or other offensive, scurrilous or opprobrious names," was not sought by appellee or entered by the court for the purpose of protecting the name or the feelings of the employees but was sought and entered solely for the purpose of protecting the business and property of appellee. The question to be determined, therefore, is not whether the feelings of the persons named in the article have been hurt or whether they have been libeled by the publication of the article. They are not complaining. The sole question is whether the order awarding the writ of injunction has been violated by appellant doing an act injurious to the property or business of appellee by intimidating or coercing its employees. It was such acts, and no other, that appellant was prohibited from doing.

In his answer and in his testimony appellant disclaims any intention to violate the injunction order. He states that officers of appellee were asserting publicly that the strike was over, that the union had disbanded and that the former employees had returned to work; that these statements were the subject of discussion at the meeting where the resolution directing the publication of the notice was adopted; that a general denial of the assertions of appellee's officers would not have been effective; that the members of the union thought it was necessary to name the former union men who were working at the plant of the Vulcan Detinning Company and who had for that reason been expelled from membership in the union; that the article was designed to show that of the 110 union men formerly employed at the plant of appellee only three were deserters; that the article was published for the purpose of holding the union forces together, and for no other purpose.

The notice does not call the employees of appellee scabs. It refers to three ex-members of the union as traitors, and it is this term which appellee says is an "offensive, scurrilous or opprobrious name." The Standard Dictionary says that a traitor is "anyone who acts deceitfully and falsely to his friends and joins their enemies." The notice says that at their meeting the union voted these men traitors to the union cause, and we are of the opinion that when used in that sense the term is not of that offensive, scurrilous or opprobrious character the term "scab" is. Therefore, if the order be construed to restrain mere application of the term "scabs, or other offensive, scurrilous or opprobrious names," to appellee's employees, we do not consider that the order was violated. But we are of the opinion that a reasonable construction of the order does not indicate that appellant and other union men were restrained from applying the term to these employees and discussing them at their meetings or elsewhere out of the presence of such employees. As we have said, the purpose of the restraining order was to protect the property and business of appellee, and the natural conclusion reached from a reading of the bill and the order is that the object of this part of the order was to prohibit the striking union men from calling the employees scabs or other opprobrious names by word of mouth, which would be using language calculated to intimidate the employees and provoke a breach of the peace, which would threaten injury to appellee's business and property. Such was the construction given by this court to a similar order in *Illinois Malleable Iron Co.* v. *Michalek,* 279 Ill. 221.

In construing this order it is proper to assume that the chancellor intended to enter an order in harmony with the constitution, which declares that "every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty." If the order in question is construed to mean that appellant and other members of the union cannot refer to the non-union men employed by ap-

pellee as traitors, then any discussion had by the strikers among themselves, in their meeting place or elsewhere, or any publication they might make or notice they might give, could be considered a violation of the injunction. If a court of equity has the power to restrain and punish mem- bers of a labor union from speaking, writing or publishing on the subject of a dispute between the union and the em- ployer, then the members of the labor union are not such persons as are within the quoted constitutional provision. If the right of a union man, or any other man, to speak, write and publish freely on any subject is abused to the harm of another the remedy is an action for damages, and that remedy is deemed adequate. If the public suffers in- jury because of a malicious publication the remedy is by a criminal action for libel. The guaranty of this section extends as fully to the poorest as to the wealthiest citizen of the State. Though an abuse of the liberty so guaranteed may result in loss for which there cannot be adequate com- pensation, the American people believe that it is better that such be the result in isolated cases than that the liberty of speech be subject to the supervision of a censor. As we have already said, if the court in fact restrained appellant from applying to employees of appellee, under any circum- stances, the term "traitor," or to indirectly brand them as persons without red blood, then a violation of the order is punishable and this judgment finding him guilty of contempt of court must be sustained. But we are of the opinion that the court did not intend to enter an order which it had no right to enter, and that a proper construction of this order will not warrant the conclusion that the court intended to restrain appellant and the members of the local of which he was president from discussing former members who had betrayed the union, as freely as they wanted to discuss them, as long as the discussion did not take place at a point and in a manner that would intimidate those employed by or

seeking employment with the appellee, thereby injuring or threatening its business or property.

The evidence in this record shows conclusively that the publication of this notice did not, in fact, intimidate any person, and did not, in fact, in any manner affect the business or property of appellee, and we are of the opinion that it had no tendency in that direction. Our examination of this record convinces us that those restrained by the order of the circuit court have obeyed the order with scrupulous care and have made an honest effort to comply with the order of the court. We find nothing in the record which indicates that appellant is guilty of contumacious conduct. As was said by the late Mr. Justice Cartwright, who for more than a quarter of a century graced this bench by his great learning and unimpeachable integrity, in *Christian Hospital* v. *People, supra:* "The proceedings have the appearance of an attempt to punish the defendants rather than to prevent injury to the complainant." A court of equity will not lend its aid to any such purpose.

The judgment of the Appellate Court and the order of the circuit court are reversed.      *Judgment reversed.*

Mr. JUSTICE FARMER, dissenting:

I cannot concur in the opinion of the court for the reason that in my judgment it is in conflict with a long line of previous decisions of this court. Heretofore the court has held that in considering cases for contempt for violation of an injunction we could not, where the court issuing the injunction had jurisdiction of the subject matter and of the parties, consider the merits of the injunction and whether it was erroneously granted or not. The opinion concedes that is the law, but, as I understand, does not apply it. I would not say, if the merits of the injunction were before us, it should be sustained, but in my understanding of the case the acts for which appellant has been adjudged guilty of contempt were acts which he was forbidden by the in-

junction to do. That the court should not have made the injunction broad enough to embrace such an act is probably true, but that question, under the former decisions of this court, can only be determined when the merits of the injunction are presented for determination. Heretofore we have held that in this character of case, if the court granting the injunction had jurisdiction, the only question to be determined is whether the party charged had violated it. Whether the injunction was erroneous or not, in my judgment appellant violated it, and that was the only question which the Appellate Court or this court could properly consider in this proceeding.

Mr. Justice DeYoung, specially concurring:

I agree with the conclusion reached in the majority opinion but not in all that is said therein.

---

(No. 16208.—Judgment affirmed.)
The People of the State of Illinois, Defendant in Error, vs. Stanley Walczak et al. Plaintiffs in Error.

*Opinion filed December 16, 1924.*