LADISLAUS J. BOLCHAZY *et al.*, d/b/a/ U.S. Graphics, Plaintiffs-Appellants, *v.* CHICAGO INVESTMENT GROUP *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 82—570, 82—618 cons.

Opinion filed September 21, 1982.—Rehearing denied October 19, 1982.

Irving Lewis, of Chicago, for appellants.

Sidney Margolis, of Winston & Strawn, of Chicago, for appellees Chicago Investment Group, Alfred Simpson, and Chicago Investment Corporation.

Donna J. Cunningham and E. T. Cunningham, both of Chicago, for appellee A-Z Letter Service, Inc.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Ladislaus & Marie Bolchazy d/b/a/ U.S. Graphics appeal from an order of the trial court denying their motion for a preliminary[1] injunction in No. 82—570 and from the order dismissing their cause of action for permanent injunctive relief in count I of their two count complaint in No. 82—618. The action arose out of an alleged breach of a lease purportedly granting them the exclusive right to commercial printing in the office building containing the leased premises. The principal issues raised by plaintiffs on appeal are whether the trial court abused its discretion in denying their motion for a tem-

---

[1]The parties referred to the requested injunction order as a "temporary injunction," both at trial and on appeal. This term is no longer appropriate. (Ill. Rev. Stat. 1979, ch. 69, pars. 3, 3—1; *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1973), 14 Ill. App. 3d 348, 349 n.2, 302 N.E.2d 394.) Accordingly, references to the trial court proceedings will be made to a "preliminary injunction."

porary injunction and whether the court erred in dismissing their suit for injunctive relief.

For the reasons which follow, we affirm.

In November 1978, the Bolchazys purchased Unigraphics, Inc. (Unigraphics), a commercial print shop located in a building known as the Willoughby Towers on South Michigan Avenue from Soterios Gardiakos. The previous term leases held by Gardiakos who then owned Unigraphics[2] was for space on the third floor of the building. The leases provided them with the "exclusive rights of print shop" in the building. According to Gardiakos the building manager eventually refused to give Unigraphics a long term lease because most of the third floor was empty and the management was looking for one or two tenants to occupy the entire floor. In the fall of 1977, Unigraphics through Gardiakos entered into an oral month-to-month lease without the exclusive rights understanding. Gardiakos was told that once the entire floor was leased, Unigraphics could move to another room at which time they would be granted an exclusive rights clause.

Both Ladislaus Bolchazy and Gardiakos stated that when they first started negotiating the sale of Unigraphics in August of 1978, Bolchazy strongly desired an assurance from Timothy Malloy, the property manager for the building, that he could obtain an exclusive rights clause in his lease. Bolchazy and Gardiakos further testified that Malloy told them that it would be no problem to accommodate the Bolchazys' desire for an exclusive rights clause once the entire third floor was leased and they were moved into another room. Bolchazy stated that he relied on this assurance when he bought the business from Gardiakos and moved into suite 301 as a month-to-month tenant without an exclusive rights clause.

A five-year lease dated March 23, 1979, for suite 503 was entered into between the subsequent lessor of Willoughby Towers, Teachers Insurance & Annuity Association of America (Teachers Insurance) and the Bolchazys. Bolchazy stated that when he received the form lease, he asked Malloy about the exclusive rights clause in Malloy's office and with Malloy's secretary apparently present. Malloy allegedly said that would be no problem, and dictated the words to the clause which Bolchazy wrote in. Both paragraphs 4 and 5 of the ninth page of the document were written by hand. The central issues in the case focus upon paragraph 5, which specified that plaintiffs "shall enjoy exclusive right to commercial printing in the building." This clause was in every executed copy of the lease introduced into evidence, in-

---

[2]Executed with predecessor lessors not herein involved.

cluding that which was filed in the executive office of the lessor's managing agent. Bolchazy took the lease home, where he and his wife signed it.

Malloy's testimony contradicted that given by plaintiffs' witnesses. He did not agree to the exclusive rights clause. He would not have submitted to the lessor a handwritten document like the one in question since everything was always typed. He did not dictate paragraph 5 to Bolchazy. He would not have used the language of paragraph 5 if he were to have dictated such a clause. He did not have the authority to grant a clause of this nature. During the time he had been in the realty business, he never negotiated any exclusive right clauses. His employer's policy was not to negotiate such clauses. If such a clause were to have been added, it would have been placed on page 8, the rider to the lease, rather than page 9 of the lease, which was the work order Exhibit B. If such a clause would have been agreed to, it would have been mentioned as a special matter in his letter of transmittal of the lease to his employer. The transmittal letter, received in evidence, contained no such mention.

The plaintiffs both testified that they signed their lease for suite 503 after Ladislaus Bolchazy added the exclusive rights clause with the alleged consent of Malloy. On May 29, 1979, Malloy sent plaintiffs' lease to New York for execution by Teachers Insurance, and on September 25, 1979, he sent plaintiffs a fully executed copy of their lease.

In December 1980, Teachers Insurance sold its title and interest in the building to the Chicago Investment Group (Investment Group) to which it assigned plaintiffs' lease. The new managing agent for the building, Chicago Investment Corporation (Investment Corporation) entered into a lease on March 4 or 5, 1981, with A-Z Letter Service, Inc. (A-Z), which apparently was in the business of commercial printing.

Plaintiffs filed a two-count complaint against the Investment Group, Alfred Simpson, Investment Corporation and A-Z seeking, *inter alia*, in count I to restrain and enjoin defendants from leasing any portion of Willoughby Towers to any person, including A-Z, other than themselves for the purpose of engaging in commercial printing while plaintiffs' lease remained in effect. Count II of the complaint was an action at law seeking an award of compensatory and punitive damages. In a written order following a bench trial, the circuit court denied plaintiffs' motion for a preliminary injunction, dismissed count I "without prejudice" to plaintiffs' action at law for damages in count II and transferred the case for reassignment to the law division.

Plaintiffs maintain that: their lease provides them with the exclu-

sive right to commercial printing in Willoughby Towers; their right to exclusive printing may be enforced by injunction; their right to enjoin a breach of this clause does not depend on whether or not they will be damaged by the breach; their right to exclusive printing may be enforced against a subsequent lessee, such as A-Z, which had knowledge of the restrictive clause prior to occupying the premises; they have no adequate remedy at law; and they were not guilty of *laches*.

The threshold and decisive issue in this controversy is whether the handwritten clause specifying that plaintiffs "shall enjoy exclusive right to commercial printing" in Willoughby Towers was so clearly intended by the parties to be part of the lease agreement as to support the injunctive relief sought. The circuit court made no express finding of fact on this issue; however, implicit in its written finding that plaintiffs failed to establish their entitlement to injunctive relief based on the presence of the exclusive right clause is the court's determination that such an intention was not sufficiently established.

■ Plaintiffs argue that if the court had found that the exclusive rights clause was not present in the lease, then it would not have transferred the case to the law division for a trial on count II for the breach of a nonexistent provision. The mere transfer, however, of the controversy to the law division without prejudice does not mean that the court found the clause to be part of the agreement in light of its written findings and order dismissing plaintiffs' cause of action for equitable relief.

Although some of the key facts leading up to the execution of the lease in question were disputed, it may be concluded as a matter of law from the uncontested portions of the record that the lease was executed by both parties subsequent to the insertion of the exclusive rights clause. Less certain, however, is whether Teachers Insurance consented to or was aware of this clause at the time it executed the lease. The official who executed the lease on behalf of Teachers Insurance did not testify. The clause, handwritten by Ladislaus Bolchazy on the ninth and last page of the lease, was neither initialed nor signed by either of the parties. The eighth page of the lease, a typewritten rider expressly made part of the lease and signed by both parties, specified that: "Landlord and Tenant hereby approve plans for certain improvements to the Premises attached hereto as Exhibit 'B' ('The Work')." Exhibit B constituted the ninth page of the lease, and provided that the landlord shall:

> "1. Furnish and install window air conditioning units;
> 2. Furnish and install levelor blinds for windows;
> 3. Furnish and install radiator covers.

4. Furnish and install sink and clear door glass.

5. The tenant shall enjoy exclusive right to commercial printing in the building."

All the items on Exhibit B thus were work orders, except Bolchazy's handwritten insertion numbered paragraph 5—the disputed exclusive rights clause. The only reference in the entire lease to page 9 was as a work order sheet.

■ From the foregoing circumstances, the circuit court could well have found implausible that a provision which so vitally affected the substantive legal rights of both parties would be located on a work order sheet if it were indeed a part of the agreement. There was ample room for such a provision on page 8, the rider which dealt with landlord-tenant obligations, and terms and conditions of occupancy under the lease, a page which was signed by both parties. The court could have determined that Malloy's testimony was more credible than Bolchazy's (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624) and concluded that the latter simply inserted this provision into the lease without prior knowledge, agreement or approval by the lessor. In view of its form and peculiar location in this document, the absence of any accompanying initials or signature, Malloy's testimony that he did not consent to this clause, and his assertion that he lacked authority to negotiate such a clause, the court could have properly found that whether this clause was intended to be part of the lease was entirely questionable. *Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 549, 420 N.E.2d 440.

A party must clearly show that he is the lawful possessor of those rights for which he seeks the aid of a court of equity in protecting or preserving such rights. (*Wilson-Broadway Building Corp. v. Northwestern Elevated R.R. Co.* (1922), 225 Ill. App. 306, 313.) A preliminary injunction is an extraordinary remedy which may be granted only upon the sound exercise of judicial discretion after a showing of urgency and necessity (*Bohomolec v. Gieblewicz* (1971), 3 Ill. App. 3d 16, 18, 278 N.E.2d 202), and is properly denied, in a case such as this, where the plaintiff's right is not free from doubt. (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 767, 424 N.E.2d 719; *People ex rel. Hawkonsen v. Conlisk* (1970), 119 Ill. App. 2d 431, 439, 256 N.E.2d 99; *Chicago Motor Coach Co. v. Budd* (1952), 346 Ill. App. 385, 390, 105 N.E.2d 140.) Accordingly, we find no abuse of the court's wide discretion in denying to plaintiffs the temporary injunctive relief they sought. *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 419, 364 N.E.2d 420.

■ Plaintiffs maintain that in a contract consisting of both hand-

written and typewritten provisions, the writing will prevail over the typing if there is a conflict, citing 12 Ill. L. & Prac. *Contracts* sec. 227 (1955), and *Summers v. Hibbard, Spencer, Bartlett & Co.* (1894), 153 Ill. 102, 38 N.E. 899. However true this observation may be, it is inapposite to the decisive issue in this controversy since it implicitly presupposes a valid integration of both handwritten and typewritten provisions, the very existence of which was at issue here.

Plaintiffs argue that because Malloy did install a sink and a clear glass door referred to in handwritten paragraph 4 of Exhibit B, he obviously knew of paragraph 5 which followed in handwriting, to which, by implication, he consented. The circuit court could have reasonably found, however, that plaintiffs' letter of May 23, 1979, to Malloy requesting these same improvements generated Malloy's performance, rather than the handwritten paragraph 4, particularly since nothing in the lease or its attachments mentions electrical work to be performed. The May 23 letter, however, does request such work, and electrical work was performed in the leased premises at or about the same time the other work was performed.

Plaintiffs' argument that the attorney for defendants admitted during the proceedings that the exclusive rights clause was part of the agreement is untenable. The purported admission was made in response to a question by the court. The court appeared to interpret counsel's ambiguous remark as conceding that the clause was physically included in the lease, considerably different from admitting that it was part of the agreement. We find no reason to disturb the court's understanding here.

■ The dismissal from which the companion appeal was taken was entered after a full evidentiary hearing, with witnesses having been presented by each of the parties together with documentary evidence and the opportunity to argue their respective viewpoints. Nothing further was sought to be presented by any party prior to the court's ruling, and none seek remandment for presentation of additional evidence. In this posture of the case, the trial court was in a position to treat count I on its merits, which the dismissal has accomplished, in effect, under these circumstances, amounting to a denial of the permanent injunctive relief sought. (See *Pfeffer v. Lebanon Land Development Corp.* (1977), 46 Ill. App. 3d 186, 193-94, 360 N.E.2d 1115; *James B. Beam Distilling Co. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 176, 178, 300 N.E.2d 488. See also *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 528, 430 N.E.2d 139.) A permanent injunction may not be awarded except in a clear and affirmative case. (*Vulcan Detinnig Co. v. St.*

*Clair* (1924), 315 Ill. 40, 145 N.E. 657; *Pfeffer v. Lebanon Land Development Corp.* (1976), 46 Ill. App. 3d 186, 194; *Staley v. Mears* (1957), 13 Ill. App. 2d 451, 457, 142 N.E.2d 835.) Count I and the proof submitted in relation to it in the present case does not meet that criterion and was, therefore, properly dismissed.

Other issues raised on appeal need not be addressed in view of our disposition of the controversy. The judgment of the circuit court is affirmed for the reasons set forth above.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.

