DENNIS E. *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. JACK O'MALLEY, Cook County State's Attorney, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—91—2259

Opinion filed November 16, 1993.

Legal Assistance Foundation of Chicago, of Chicago (Ruthanne DeWolfe, Carl Flaningam, and James Latturner, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Patricia M. Shymanski, and Patricia M. Moser, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

At the time they filed the instant action, plaintiffs Dennis E., Larry H., Anthony F., Alexander G., Michael N. and John S. were in the custody of the Illinois Department of Corrections (IDOC), after having been convicted in the circuit court of Cook County of various criminal offenses. In their complaint, they allege that each year, approximately 6,600 individuals who have been placed in the custody of IDOC are from Cook County, and that of the approximately 20,000 persons currently in the Illinois corrections system, 12,000 of them entered it after being convicted in the circuit court of Cook County.

Their complaint focuses on defendants' purported noncompliance with the provisions of section 5—4—1(d) of the Unified Code of Corrections (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(d)) which require the State's Attorney to prepare a statement describing the crimes committed by all defendants who are placed in the custody of IDOC. In practice, the statement is composed by the assistant State's Attorney who prosecuted the case and is sent to IDOC over the signature of the State's Attorney himself. IDOC utilizes this statement of the case along with a variety of other pertinent penological concerns, such as the prisoner's history of escape, staff recommendations, length of sentence and the prisoner's relative emotional stability, in order to assign to the newly convicted prisoner a security classification. This initial classification determines which of IDOC's institutions will house the inmate, and it may also have some bearing on IDOC's assessment of the inmate's suitability for a particular program or work assignment. The present version of the Act reflects an amendment enacted in 1973 wherein the legislature removed from the process the trial judge, who formerly had joined with the State's Attorney in the preparation of the statement, and invited the participation of defense counsel. See Ill. Rev. Stat. 1971, ch. 108, par. 203.

Plaintiffs allege that the State's Attorney has adopted and institutionalized a policy which encourages his assistants to prepare erroneous and exaggerated statements, to pepper liberally throughout the statement the assistant's personal opinion of the prisoner's gen-

eral character and to offer the assistant's untrained estimate concerning the prisoner's rehabilitative potential. According to the complaint, the Cook County State's Attorney's is the only office in all of the State which has such a policy or which actively promotes such a practice.

Plaintiffs included with their complaint excerpts of the statements which were prepared after they were convicted and which they consider to violate the Act. Dennis E. objected to the closing sentence of his statement which commented: "Because of this defendant's prior background and aggravating circumstances involved in the offense, this defendant should never be considered for early release." Dennis E. maintained that by interjecting his personal opinions against him, the State's Attorney had become an adverse character witness, and despite its being requested to do so, the State's Attorney's office has refused to redact the personal opinion section of the letter. This request for redaction was made as well by all other named plaintiffs, and in each instance was similarly rejected by the State's Attorney's office.

Larry H. took issue with the following characterization of his crime: "The viciousness and cold-heartedness with which this savage killing was carried out is hard to describe with the written word." He also sought to have expunged from his record the expression of the State's Attorney's opinion that "Judge Strayhorn's seventy-five (75) to one hundred (100) year sentence is a powerful admonition to the Board as to his feelings concerning these three defendants. On behalf of the State's Attorney's Office, we concur with the severe sentence and ask the Parole Board to consider these matters before even thinking of releasing these three murderers." John S. alleged that the statement in his case presented the inaccurate impression that he physically participated in the actual murder of the victim even though the prosecutor was fully aware that he was convicted under a theory of accountability and was not present in the room in which the killing took place. The above complaints, plaintiffs allege, are typical of the overstatements, inaccuracies and interjections of personal animus toward recent convictees that plague all of the statements that flow from the office of the Cook County State's Attorney to IDOC.

With regard to the clerk of the circuit court of Cook County, plaintiffs aver in their complaint that she has promulgated an office-wide policy resulting in the practice of failing and/or refusing to transmit to recently convicted individuals the statement of their case unmistakably required by section 5—4—1(d). Also allegedly in violation of the Act, she has refused to implement a policy which would ensure that new inmates receive the copy of the statement to

which they are entitled within the 10-day limitation period imposed by the statute.[1]

As a direct result of the alleged malfeasance by the State's Attorney and the nonfeasance of the clerk, plaintiffs assert that IDOC, which lacks the ability to gather background information on its new charges on its own and does not have the institutional skill to scrutinize closely the veracity of the statements it receives, is required to rely fully on the State's Attorney's rendition of the facts when assigning security classifications to the newly arrived inmates. This initial classification, in turn, fixes an inmate's eligibility for rehabilitative programs and job assignments. The statements then become a part of the inmate's master file and, as such, are also considered by the Prisoner Review Board (Board), which Board, plaintiffs claim, treats the statements as the official recitation of the events of the prisoner's crime. Plaintiffs allege variously that as a direct result of both defendants' noncompliance with the Act, they have been denied: access to IDOC programs; a lowered security classification; parole; and/or desirable job assignments.

As a remedy for past violations, plaintiffs seek *mandamus* to compel the clerk's office to implement a new policy and practice whereby it would transmit the statements to the "other persons," meaning the new prisoners, within 10 days of receipt as required by the Act and to transmit the copies of the statements to prisoners from Cook County still in the custody of IDOC from whom they have been unlawfully withheld, dating back to those prisoners first incarcerated immediately after the statute became effective in 1973. They also seek *mandamus* against the State's Attorney to compel the promulgation of a policy to foster the writing of accurate and objective statements for future newly convicted individuals; and to remedy past violations of the Act, plaintiffs would require the State's Attorney to review all of the statements written pursuant to the present Act for each prisoner from Cook County who remains in IDOC's custody, and rewrite those which are not objective or accurate. As alternate prospective remedies, plaintiffs seek a declaratory judgment of their rights under section 5—4—1(d) of the Code and a permanent injunction preventing both officials from violating the Act in the future.

In the next two counts of plaintiffs' complaint, they allege that the actions of defendants have combined to violate the due process and equal protection clauses of the State and Federal Constitutions.

---

[1]In a footnote to plaintiffs' amended complaint, they refer to change of policy recently effected by the clerk's office. In addition, in argument before this court, counsel for the clerk advised that her office was fulfilling the duties given it by the Act. However, plaintiffs do not concede that the clerk is now in compliance with the statute.

Their final allegation is that the actions of the two officials constitute a violation of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), which mandates that criminal penalties be determined with the "objective of restoring the offender to useful citizenship."

Defendants brought a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), asserting that plaintiffs' complaint was insufficient as a matter of law to state any cause of action whatsoever. After accepting memoranda and entertaining argument on the motion, the circuit court granted defendants' motion to dismiss, and at the subsequent request of plaintiffs, did so with prejudice, from which order plaintiffs filed a timely notice of appeal.

I

Plaintiffs' initial contention is that the trial court erred when it held, pursuant to defendants' section 2—615 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), that their complaint was legally insufficient. It is well settled that when reviewing the grant of a section 2—615 motion, we must accept as true all well-pleaded facts and must draw from those facts all reasonable inferences which we deem favorable to the nonmoving party. (*Burdinie v. Glendale Heights* (1990), 139 Ill. 2d 501, 504-05, 565 N.E.2d 654, 657; *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 388, 577 N.E.2d 1344, 1355.) If, when so viewed, the reviewing court finds that the complaint does not state a claim which warrants relief, the trial court's dismissal of the complaint is to be affirmed. (*Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657.) However, since a dismissal of the complaint with prejudice is a judgment on the merits which has a *res judicata* effect on plaintiffs' claim, we will affirm such an action of the circuit court only where it is plain that the plaintiff can allege no set of facts which would entitle him or her to some judicial remedy. *Burdinie*, 139 Ill. 2d at 504-05, 565 N.E.2d at 657.

Although a writ of *mandamus*, which is the first of the remedies plaintiffs seek in their efforts to correct defendants' alleged willful indifference to the commands of section 5—4—1(d), is an extraordinary remedy, it is nonetheless governed by the pleading rules which apply to other actions at law. (*People ex rel. Pignatelli v. Ward* (1949), 404 Ill. 240, 88 N.E.2d 461; *People ex rel. Huff v. Palmer* (1934), 356 Ill. 563, 191 N.E. 199; *Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 385 N.E.2d 92.) In order to withstand a challenge to the legal sufficiency of a complaint seeking *mandamus*, it, first and foremost, must

allege facts which establish a clear right of plaintiff to the desired relief. In addition, it must also show "a clear duty on the part of the respondent to act, and clear authority in the respondent to comply with the terms of the writ." *In re Claudia K.* (1982), 91 Ill. 2d 469, 476, 440 N.E.2d 78, 81 (and cases cited therein).

■ As a general matter, *mandamus* will lie only to direct an official to perform an act which is purely ministerial or, put another way, *mandamus* will issue to order an individual to do an act over which he has no discretion. (*Burnidge Brothers Almora Heights, Inc. v. Wiese* (1986), 142 Ill. App. 3d 486, 491 N.E.2d 841.) Plaintiffs suggest that *mandamus* is also an appropriate means of undoing a wrongful act over which the defendant had discretion if the act as performed constituted an abuse thereof, citing our supreme court's decision in *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 394 N.E.2d 1157, but we disagree. In *Scholz*, the supreme court issued *mandamus* compelling the chief judge of the Eighth Judicial Circuit to expunge an administrative order wherein he authorized salaries for judicial officials in his circuit in excess of the amounts appropriated by the commissioners of the county in which those officials served. However, the basis of the court's issuance of the writ was not because the respondent had abused his discretion in granting the higher salary, but rather because it found that based on the facts before it, the chief judge had no authority at all to alter the compensation level from that set by the county board. (See also *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 336 N.E.2d 759 (directing a circuit court judge, via *mandamus*, to expunge an order to the State's Attorney to return property seized in a lawful search because, given the multitude of other remedies available to the applicants, the court could not invoke its equitable powers to effect the return).) Plaintiffs are therefore incorrect when they urge that *mandamus* is a proper means to correct an official's wrongful exercise of discretionary authority; thus, despite plaintiffs' intimations to the contrary, in order to withstand a section 2—615 motion, their complaint must also establish that the actions of both defendants are purely ministerial in nature.

## A

Plaintiffs base their right to *mandamus*, as well as to all of the other remedies desired, on what they perceive to be the clear obligations of these two officials imposed by section 5—4—1(d) of the Unified Code of Corrections, which provides:

"(d) When the defendant is committed to the Department of Corrections, the State's Attorney shall and counsel for the defen-

dant may file a statement with the clerk of the court to be transmitted to the department, agency or institution to which the defendant is committed to furnish such department, agency or institution with the facts and circumstances of the offense for which the person was committed together with all other factual information accessible to them in regard to the person prior to this commitment relative to his habits, associates, disposition and reputation and any other facts and circumstances which may aid such department, agency or institution during its custody of such person. The clerk shall within 10 days after receiving any such statements transmit a copy to such department, agency or institution and a copy to the other party, provided, however, that this shall not be cause for delay in conveying the person to the department, agency or institution to which he has been committed." Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(d).

1

With regard to defendant State's Attorney, plaintiffs maintain that the Act vests in all newly convicted individuals the right to have an objective and accurate statement of the facts pertinent to the crimes of which they were convicted, along with any information concerning the prisoner's background which would be beneficial to IDOC when forming its original assessment of its new charge. They argue, accordingly, that the current practice of the State's Attorney's office, which they maintain is to interject the personal animus of the prosecutor into the official statement, is violative of the letter and spirit of the Act. In *People v. Wooten* (1946), 392 Ill. 542, 64 N.E.2d 857, the supreme court addressed a similar challenge to the propriety of a statement prepared jointly by the State's Attorney who prosecuted the defendant's case and the judge who presided over it. The defendant maintained that the statement regarding him tended to implicate him in crimes for which he was neither indicted, tried nor convicted. The court rejected those contentions, stating flatly that the statute which required the issuance of the statements "is broad in its scope and amply warrants the remarks of the trial judge and the State's Attorney contained in their statement." *Wooten*, 392 Ill. at 546, 64 N.E.2d at 859.

Later, in *People v. Hawkins* (1973), 54 Ill. 2d 247, 296 N.E.2d 725, the court reaffirmed the principle of *Wooten* that the statute governing the composition of the official statement of the facts of an individual's case imposes no limitations on the State's Attorney. There, the defendant argued that the State's Attorney violated the terms of a negotiated plea by including with the statement a recommendation that the defendant not be considered for early parole

because his antagonism made him unfit. The court rejected this contention, finding that the opinion of the State's Attorney regarding an individual's suitability for parole clearly fell within the category of "other facts and circumstances" which the governing statute expressly recognized to be a proper inclusion in the statements.

▇ This court has also previously considered the issue at bar on a number of occasions and, without exception, has declined to find that the statute prescribed what the State's Attorney's statements should or should not contain. The issue was visited most recently in *People v. Barto* (1975), 27 Ill. App. 3d 853, 327 N.E.2d 469, where the defendant complained that the State's Attorney had violated the plea agreement into which they had entered because the statement he submitted to IDOC included the prosecutor's opinion that the defendant was a dangerous person who should not be admitted to parole. The court disagreed and echoed the sentiments which trace back to *Wooten* that the statute vests broad authority in the State's Attorney to compose the statements as he sees fit, and that this discretion encompasses the ability to include therein an expression of his viewpoint with regard to an inmate's suitability for parole.

It cannot be gainsaid, then, considering these precedents, that the Act at issue allows the State's Attorney to include his opinions and recommendations with regard to the defendant's fitness for parole (*Hawkins*, 54 Ill. 2d 247, 296 N.E.2d 725), or to characterize new convictees in a less than complimentary manner (*Barto*, 27 Ill. App. 3d 853, 327 N.E.2d 469). Plaintiffs attempt to avoid this dispositive conclusion by emphasizing the fact that all of these cases, save one, were decided pursuant to an earlier statute which was repealed and which was succeeded by the present Act in 1973. They also maintain that the one case decided under the current law, *Barto*, failed to appreciate the great changes worked by the new statute, and therefore erred in holding that the State's Attorney's ability to compose the statements is unfettered.

But plaintiffs' assertions regarding the alleged alteration of the commands of the Act are belied by even the most cursory examination of the prior version of section 5—4—1(d), which discloses that no great change in the duties and obligations of the State's Attorney was, in fact, worked by the amendment to the Act. The statute prior to its amendment in 1973 provided in salient part:

> "In all cases, *** the judge by or before whom any prisoner *** is convicted ***, and also the State's Attorney of the county in which he or she was convicted *** shall file an official statement with the clerk of the court to be transmitted to and to thereby furnish the Parole and Pardon Board an official statement of the

facts and circumstances constituting the crime or offense whereof the prisoner *** was convicted ***, together with all other information accessible to them in regard to the career of the prisoner *** prior to the time of the commitment for the crime or offense of which he or she was convicted *** relative to his or her habits, associates, disposition and reputation and any other facts and circumstances which may tend to throw light upon the question as to whether such prisoner *** is capable again of becoming a law-abiding citizen ***." Ill. Rev. Stat. 1971, ch. 108, par. 203.

Although these two enactments differ as to which State agency is to be the recipient of the statements, we do not consider this difference significant in the case at bar in view of the fact that the provisions which actually describe the contents of the statements are substantially alike. Both call for information regarding the individual's "habits, associates, disposition and reputation," which, it would seem, necessarily invites the use of subjectivity on the part of the person supplying it. Moreover, and most important, the current version of the Act reemploys the phrase "facts and circumstances" in informing the State's Attorney as to what he or she is to include in the statement. As noted above, the supreme court in *Hawkins* construed this phrase to be broad enough to allow the interjection of the State's Attorney's opinion and recommendations. It is a cardinal rule of statutory construction that where the legislature reenacts a statute which has been judicially construed, that body will be deemed to have tacitly approved of such construction if it uses virtually the same words as in the previous enactment. Consistent with that legislative endorsement, the previous judicial construction will be impressed upon the new version of the act as well. (See *Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 549 N.E.2d 578; *Frank v. Salomon* (1941), 376 Ill. 439, 34 N.E.2d 424.) Here, the legislature did not alter substantially the language of the statute with regard to the content of the statements, thus suggesting that the General Assembly did not intend to depart from the view of "facts and circumstances" which had been announced by our supreme court.

This conclusion gains further support from the fact that the most radical change to the Act appears to have rendered the procedures for the preparation of the statements intentionally adversarial, for while retaining the State's Attorney, the legislature removed from the process the trial judge, who must be presumed to have been disinterested in the defendant's case, and placed in his stead his defense counsel, thus giving the State and the defendant the opportunity to submit statements to IDOC, in an attempt to achieve some objective balance between the statements offered by the real parties in interest.

Therefore, under *Wooten* and *Hawkins*, the newly convicted individuals from Cook County have no legally recognizable right to what they deem to be an objective statement and, since a clear right must be asserted in order to state a case for *mandamus*, it would be impossible for them to allege *any* facts which would entitle them to such relief. Consequently, the trial court did not err when it held that plaintiffs' complaint for the remedy was legally insufficient.

■ Moreover, even if we were to ignore the precedents extant in this area of the law, public policy concerns would militate against our accepting plaintiffs' argument. The construction of section 5—4—1(d) which they propose would create an unmanageable system which would necessitate constant judicial overview of what evidently was intended to be a simple means of providing IDOC with some idea of the type of person whom it was receiving. Under plaintiffs' view of the Act, the process was not intended to be a contest between adversaries, but rather, the two actors, the State's Attorney and defense counsel, were to offer an objective assessment of the individual. But objectivity on the part of neither the State's Attorney nor the defendant is required by the Act, and in any event, true objectivity is in the eye of the beholder. As a result of this verity, if we were to find *mandamus* to be proper here, we can be assured that every statement written by the State's Attorney or by the defendant for that matter, which provokes even the slightest offense to the other party would nonetheless result in the endless proliferation of legal actions wherein the aggrieved party would seek judicial review of the statement, alleging that it is filled with the vitriol or the misstatements of one or the other or both of the parties.

The better approach than perennial judicial review of the statements is the system which the Act arguably created. A sensible reading of that law leads irresistibly to the conclusion that the legislature envisioned a process whereby IDOC evaluates the individual placed in its custody based, in part, on the statements of both the prosecutor and defense counsel, whether the statements be viewed as subjective or objective. The Act then leaves it to IDOC's practiced scalpel to excise or preserve whatever, in its judgment, it determines to be necessary, being always fully mindful of the fervent advocacy that invariably permeates both statements, just as the Prison Review Board is able to decide, after hearing evidence pro and con, subjective and objective, whether to grant parole to those prisoners who are eligible therefor. Accordingly, the judgment of the trial court dismissing the *mandamus* count against the State's Attorney is affirmed.

2

■ It flows logically from our determination above that the dismissal of the count in plaintiffs' complaint which seeks injunctive relief to prevent future violations of the statute by the State's Attorney must likewise be affirmed. Among the elements a plaintiff must establish in order to warrant the issuance of an injunction is that he or she has an undisputed legal right to the interest to be protected by the injunction. (*Sadat v. American Motors Corp.* (1984), 104 Ill. 2d 105, 470 N.E.2d 997; *Bolchazy v. Chicago Investment Group* (1982), 109 Ill. App. 3d 426, 440 N.E.2d 950.) Under the cases decided before the law was amended and which are still controlling, section 5—4—1(d) vests in plaintiffs no right to an objective statement, which is the only interest they assert as needing protection. Thus, the complaint is legally insufficient to warrant injunctive relief as well.

B

■ However, plaintiffs have asserted a *prima facie* entitlement to both retrospective relief in the form of *mandamus* and prospective injunctive relief to compel the clerk of the court to comply with her duties as outlined in section 5—4—1(d). As alleged, the clerk has failed to transmit the statements to newly convicted individuals from Cook County, a duty which the statute plainly orders her to perform. Although there are some adumbrations in the briefs before this court, as well as in a footnote in the complaint, that the clerk has corrected this oversight and is at present transmitting the statements to the "other persons," this purported current compliance with the statute is an anticipated affirmative defense distinct from the actual allegations made in the complaint. Since the instant case seeks review of a section 2—615 motion, we may not consider any facts which are extraneous to those asserted in the complaint except those of which we may take judicial notice or which have been judicially admitted. See 3 R. Michael, Illinois Practice, § 27.4, at 504 & nn.1 through 3 (and cases collected therein).

Furthermore, even if we could accept the clerk's argument regarding current compliance, we would not be free to dismiss plaintiffs' action against her because her current compliance with the Act would not rectify her office's alleged past indifference to the commands of the Act, nor would it redress plaintiffs' injuries which they assert were caused by her office's past noncompliance.

The procedural posture of this action and its concomitant standard of review also preclude our contemplation of the clerk's other proposed defense to compliance. She maintains that it would be an administrative nightmare to provide retroactive relief to the 12,000

or so individuals to whom the statements have not been transmitted in the 20 years since the enactment of section 5—4—1(d). Assuming without deciding that this would constitute a valid defense to plaintiffs' *mandamus* and injunction counts against the clerk, we may not consider the practicality of compliance, which is a matter outside the four corners of the complaint, within the context of a section 2—615 proceeding. Whether or not these claims may be proper in the next phase of this litigation, given the current posture of the case, they are not cognizable at this point. Therefore, the trial court erred when it held that the complaint did not state a claim against the clerk of the court, and its judgment in her favor is reversed and the action remanded for further proceedings.

## II

■ Plaintiffs next ask this court to reverse the trial court's judgment wherein it held that they could state no claim for relief under section 1983 of the Federal Civil Rights Act of 1871. (42 U.S.C. § 1983 (1988).) Simply put, "in any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." (*Parratt v. Taylor* (1981), 451 U.S. 527, 535, 68 L. Ed. 2d 420, 428, 101 S. Ct. 1908, 1913, *overruled on other grounds, Daniels v. Williams* (1986), 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662; see also *Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 546 N.E.2d 810, *appeal denied* (1990), 131 Ill. 2d 568, 553 N.E.2d 403.) Neither party contests that the first element of the action was properly alleged, as the complaint clearly stated that defendants' conduct was in reaction to a statutory command. It is the second element, *i.e.*, whether the respective action or inaction of the State's Attorney and clerk of the court infringed upon an interest of plaintiffs which is secured by either the Federal Constitution or Federal statutory law, which gives rise to this action.

## A

Plaintiffs maintain that the actions of the State's Attorney and the clerk of the court deprived them of both due process and the equal protection of the laws. Addressing first plaintiffs' claims based on the equal protection clause, it has been held that the clause "is not a source of substantive rights, 'but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity.'" (*Shango v. Jurich* (7th Cir. 1982), 681 F.2d

1091, 1103, quoting *Harris v. McRae* (1980), 448 U.S. 297, 322, 65 L. Ed. 2d 784, 808, 100 S. Ct. 2671, 2691.) Consequently, to prevail plaintiffs must do more than show that the decisionmaker treated them differently than others; rather, a legally sufficient section 1983 claim based on the equal protection clause must assert that the official acting under color of State law "singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango*, 681 F.2d at 1104, citing *Personnel Administrator v. Feeney* (1979), 442 U.S. 256, 279, 60 L. Ed. 2d 870, 887-88, 99 S. Ct. 2282, 2296.

■ Plaintiffs allege that both defendants have developed and endorsed practices which deny all newly convicted persons from Cook County rights which they believe are assured them by section 5—4—1(d). However, since they maintain that defendants pursue this practice against *all* convictees from Cook County with no preferential treatment toward anyone, they have not established what would seem to be the obvious predicate to any equal protection action, namely, that the State officers named in the section 1983 complaint have treated them in a way which differs from his or her treatment of some other group. They argue instead that as a consequence of defendants' actions, they are treated differently by IDOC, which unnecessarily places them in a higher security classification, thereby depriving them of access to training and preferred work assignments while in prison.

But these allegations do not establish an equal protection claim because the actual disparate treatment comes from IDOC, an agency plaintiffs intentionally chose not to join in this action.[2] For the purpose of an equal protection action, it is not enough to show that as a result of defendants' willful and purposeful acts, plaintiffs are treated dissimilarly when compared to other prisoners; instead, the essence of unequal protection of the law is that the same State actor favors one person or group over another while harboring the desire to discriminate for invalid reasons. (See *Roach v. County of Lake* (1984), 126 Ill. App. 3d 976, 983, 467 N.E.2d 1146, 1152 ("In order to establish a discriminatory purpose, plaintiffs must show that *defendants* singled out a particular group for disparate treatment and selected their course of action at least in part for the purpose of causing its adverse effects on an identifiable group[ ]") (emphasis added), citing *Shango*, 681 F.2d at 1104; *Azeez v. DeRobertis* (N.D. Ill.

---

[2]In fact, in their brief to this court as well as in argument before us, they stressed, as if they needed to, that IDOC was not a party to this action.

1982), 568 F. Supp. 8, 10; *Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, 453 N.E.2d 96.) It is this nexus of action and improper purpose which is conspicuously absent in the complaint at bar.

The requisite link is exemplified by *Beverly Bank*, a case upon which plaintiffs place great reliance. There, the plaintiffs maintained that the county taxing body invidiously discriminated against landowners who used their property for commercial purposes as against owners of land reserved for residential or agricultural use. The court found that the plaintiffs had stated a cause of action against the Board because their complaint alleged that it had systematically overvalued the first type of properties while systematically undervaluing the latter types. In short, the plaintiffs established that the same actor treated two classes of individuals differently with the intent to do so. In contrast here, defendants are alleged to be acting willfully, but IDOC is alleged to be treating them in the disparate fashion. Accordingly the trial court was correct in dismissing plaintiffs' equal protection claim against both defendants.

B

Plaintiffs also claim that defendants interfered with their right to a valid classification system, which they maintain violates their right to due process of law. They do not, however, base their complaint on an alleged deprivation of a life, liberty or property interest without meaningful notice or a meaningful opportunity to be heard, which is at the core of procedural due process. Instead, they argue that the conduct of defendants violates the oxymoronically entitled substantive component of the due process clause.

While procedural due process prohibits the deprivation of a protected interest unless the procedures provided are adequate to ensure that it will not be effected arbitrarily, substantive due process imposes absolute limits on the State's ability to act without regard to any procedural protections in place. (*Collins v. City of Harker Heights* (1992), 503 U.S. 115, 117 L. Ed. 2d 261, 112 S. Ct. 1061.) There are two separate strands to the Supreme Court's substantive due process jurisprudence. To state a due process violation under the first, the plaintiff need not establish a deprivation of a specific property or liberty interest, but must show that the government official's conduct "shocks the conscience." (*Rochin v. California* (1952), 342 U.S. 165, 172, 96 L. Ed. 183, 190, 72 S. Ct. 205, 209.) Under the second approach, the plaintiff must demonstrate the denial of an interest which was protected absolutely by the clause.

■ It would be difficult to accept that the conduct at issue here "shocks the conscience" in light of the fact that, at least insofar as

the State's Attorney is concerned, the conduct of which plaintiffs complain does not even contravene the Act in question, and, in any event, it certainly cannot be considered so severe that it may fairly be characterized as offensive to "hardened sensibilities," nor does it "offend the community's sense of fair play and decency." (*Rochin*, 342 U.S. at 172-73, 96 L. Ed. at 190-91, 72 S. Ct. at 210.) Accordingly, plaintiffs cannot assert a denial of their rights under the first strand of the substantive due process analysis.

With regard to the second approach, it generally addresses rights which are not explicit in any particular clause of the Bill of Rights, but are nonetheless protected from governmental intervention because they are so fundamental to individual autonomy. (*E.g.*, *Griswold v. Connecticut* (1965), 381 U.S. 479, 484, 14 L. Ed. 2d 510, 514-15, 85 S. Ct. 1678, 1681; *Roe v. Wade* (1973), 410 U.S. 113, 152-53, 35 L. Ed. 2d 147, 176-77, 93 S. Ct. 705, 726-27 (right to privacy implicit in the due process clause).) In addition, the State by its own actions can create a liberty interest which will thereafter be protected by the due process clause. It does so

"by placing substantive limitations on official discretion. A[ ] [section 1983 plaintiff] must show 'that particularized standards or criteria guide the State's decisionmakers.' [Citation.] If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or no reason at all,' [citation], the State has not created a constitutionally protected liberty interest. [Citations.]" *Olim v. Wakinekona* (1983), 461 U.S. 238, 249, 75 L. Ed. 2d 813, 823, 103 S. Ct. 1741, 1747.

In *Hewitt v. Helms* (1983), 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864, the Court looked to the statutes and correction department regulations of Pennsylvania which touched upon the transfer of prisoners from the general population to administrative segregation to determine if the laws of the State imposed sufficient limitations on prison officials to create a protected right for prisoners in their assignments. It observed that the regulations "used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed." (*Hewitt*, 459 U.S. at 471, 74 L. Ed. 2d at 688, 103 S. Ct. at 871.) Based on the controlling statutes and correction department regulations, the Court concluded that administrative segregation was barred absent the occurrence of some sufficiently specified events, which, in that case, were a "need for control" or a "threat of a serious disturbance." (*Hewitt*, 459 U.S. at 472, 74 L. Ed. 2d at 688, 103 S. Ct. at 871.) The Court accordingly held that the State by its own volition had created a protected

interest for prisoners which prohibited their transfer to segregation unless there was the requisite "need for control" or a "threat of a serious disturbance."

Plaintiffs argue that, in a similar vein, the enactments of the General Assembly and the regulations promulgated by IDOC vest in prisoners the protected right to a valid system of security classifications and work assignments. As examples of these substantive limitations on the discretion of prison officials, they point to section 3—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—2(a)) and to the IDOC regulations contained in the Illinois Administrative Code. (*E.g.*, 20 Ill. Adm. Code § 502.20 (1986).) However, both of these enactments address IDOC which, as plaintiffs themselves have emphasized, is not a party to this action. Nowhere in either rule is the clerk of the court or the State's Attorney named. This also holds true with regard to the other statutes, regulations and internal IDOC procedural manuals upon which plaintiffs rely in order to establish some sort of limitation on the discretion of defendants at bar.

Under the State-created-protected-liberty-interest wing of substantive due process jurisprudence, an enactment which expressly limits one State official's discretion does not, by implication, circumscribe the discretion of all other officials whose duties have only some tangential relationship to the subject matter of that enactment. An inmate's protected liberty interest arises only if a particular official's discretion over some aspect of his incarceration is limited but that official ignores that limitation thereby depriving him of his State-granted right. See *Russ v. Young* (7th Cir. 1989), 895 F.2d 1149, 1153 ("[The] liberty interest is created only where the state regulation in question contains 'specific directives to the *decisionmaker* that if the regulations' substantive predicates are present, a particular outcome must follow. . .' [Citation.]"). (Emphasis added.)

Here, assuming without deciding that the pertinent statutes, regulations and rules impose some substantive limitation on correction officials' discretion regarding a prisoner's security classification and work assignments, such limitations bind only IDOC and its agents. If they are not abiding by the strictures of the rules which govern their actions, plaintiffs are indisputably free to file suit to protect the liberty interest which the laws provide. But with regard to the State's Attorney and the clerk of the court, the only applicable law of the State which addresses their respective roles in the classification of prisoners is section 5—4—1(d) of the Unified Code of Corrections, and, as we have decided above, that section leaves the content of the statements fully up to the State's Attorney in his un-

restricted discretion. As a result, plaintiffs cannot assert that the laws of the State create a protected liberty interest in an objective statement of their case; thus, they are unable to establish that the State's Attorney deprived them of that right. Accordingly, the trial court correctly determined that their complaint in this regard was legally insufficient.

It is a different matter, of course, when our scrutiny turns to the clerk of the court. Section 5—4—1(d) indisputably charges her with the responsibility of transmitting to "the other person" the statements which were prepared by the State's Attorney. Her apparent noncompliance with this mandatory provision of the law violates the plaintiffs' State-created liberty interest in the receipt of those statements. Consequently, the trial court erred when it held that the complaint did not state a claim under section 1983 against her for the deprivation of the plaintiffs' rights secured by the due process clause.

Aside from the alleged State-created right, plaintiffs also baldly assert that, like the inviolable right of interstate travel (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322), or the right to physical integrity which prohibits State actors from occasioning violence on pretrial detainees (*Bell v. Wolfish* (1979), 441 U.S. 520, 535 n.16, 60 L. Ed. 2d 447, 466 n.16, 99 S. Ct. 1861, 1872 n.16), the Federal Constitution itself assures a substantive due process right to a valid security classification system. However, they neglect to explain where in the Constitution this right may be found. Moreover, the two cases they cite in support of their theory do not stand for the proposition that such a right is so fundamental that it is, therefore, implicit in the fourteenth amendment. In both *Newman v. State of Alabama* (5th Cir. 1977), 559 F.2d 283, and *Palmigiano v. Garrahy* (D.R.I. 1977), 443 F. Supp. 956, the courts never reached the question of whether the Constitution contained such a right. In *Newman*, for example, the court declined to address proper adherence to security classifications because the prison officials' noncompliance had become moot. The court wrote:

> "We make no comment [regarding classification] except to say that we understand the classification of prisons in the Alabama prison system will hereafter proceed under the control and direction of the duly constituted Alabama prison authorities, with no interference *** saving, of course, the right of the District Court by appropriate measures, if needed, to see to it that constitutionally required classification standards, *if any*, are observed by prison authorities in the exercise of a function which is fundamentally theirs, [citation]." (Emphasis added.) *Newman*, 559 F.2d at 290.

Recently, the United States Supreme Court had cause to comment upon the nature of substantive due process. The Court realized that given the open-endedness of "finding" rights inherent in the protections afforded by the Constitution, there were few systemic checks on the judiciary's power over the area, and its utilization therefore carried with it great potential for abuse. Accordingly, the Court expressed great reluctance to expand those implicit rights, or at the very least, it found it necessary "to exercise the utmost care whenever we are asked to break new ground in this field." (*Collins*, 503 U.S. at 125, 117 L. Ed. 2d at 273, 112 S. Ct. at 1068.) Following this sage counsel, we decline plaintiffs' invitation to "find" a constitutional right to a classification system. Hence, we affirm the trial court's judgment that the complaint did not assert a legally sufficient section 1983 claim based on an alleged violation of the due process clause against the State's Attorney.

That having been said, we nonetheless find it necessary to air the concerns we share regarding the practices of the State's Attorney as alleged in plaintiffs' complaint. Although we agree that section 5—4—1(d) does not obligate the State's Attorney's office to compose the statements in any particular way, we fail to understand what advantage is gained by that agency, or more important, by the citizens of this State, by the characterization of the new convictees as "savages" or by the expression of an assistant State's Attorney's relatively uninformed opinion on whether an individual can be rehabilitated. We remind the State's Attorney that the purpose of the statement is to give IDOC a clearer picture of the individual it is about to receive. It would seem patent that this goal is better achieved if IDOC is relieved of the burden of having to filter out hyperbole and vitriol before gaining some information of penological value about that person.

It appears that the State's Attorney's office is under the misapprehension that the information it provides in this statement will be its only chance to express itself with regard to the character of the new convictee. However, this apparently agency-wide belief is incorrect. The Unified Code of Corrections affords other opportunities for the State's Attorney to offer its opinions of the individuals it has prosecuted. Section 3—3—4(e) sets forth a procedure which ensures that the State's Attorney will be advised in writing at least 15 days before the Prisoner Review Board considers the possible parole of any inmate in the custody of IDOC, and it allows that office to provide any information it deems relevant to the Board's decision. (Ill. Rev. Stat. 1991, ch. 38, par. 1003—3—4(e).) Moreover, such information will carry weight before the board because section 3—3—4(d)

mandates that it give due consideration to the State's Attorney's presentation. (Ill. Rev. Stat. 1991, ch. 38, par. 1003—3—4(d).) Rather than the statements sent to IDOC, we consider the letter sent to the Prisoner Review Board to be a much more appropriate medium within which to present the types of characterizations complained of by plaintiffs in the case at bar.

For the foregoing reasons, we affirm the circuit court's dismissal with prejudice of plaintiff's claims against the State's Attorney, but reverse and remand that portion of its judgment which dismissed counts I, II and III of the amended complaint alleged against the clerk.

Affirmed in part; reversed in part, and remanded.

McCORMICK, P.J., and HARTMAN, J., concur.